UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOSE SOCORRO CHIPRES MADRIZ,<br><br>　　　　Plaintiff,<br>vs.<br><br>UNITED STATES OF AMERICA and EC COMPANY,<br><br>　　　　Defendants. | Case No. 3:22-cv-5796<br><br>COMPLAINT OF PLAINTIFF |

COMES NOW Plaintiff Jose Socorro Chipres Madriz and alleges and pleads as follows:

### I. JURISDICTION AND VENUE

1.1　The claims herein against the United States are brought in U.S. District Court pursuant to 28 U.S.C. §1346(b), and 28 U.S.C. §2671 *et seq.*, for money damages as compensation for personal injuries that were caused by the negligent acts and omissions of employees or agents of the United States while acting within the scope of their offices, employment or agency, under circumstances where the United States, if a private person, would be liable to Plaintiff in accordance with the laws of the State of Washington.

1.2　The claims herein against EC Company are brought in U.S. District Court pursuant to 28 U.S.C. §1367(a), for money damages as compensation for personal injuries that

COMPLAINT - 1

were caused by the negligent acts and omissions of employees or agents of EC Company while acting within the scope of their employment or agency, under circumstances that make those actions part of the same case or controversy as the claims against the United States.

1.3 Venue is proper in that all, or a substantial part of the acts, omissions and injuries forming the basis of these claims occurred in Cowlitz County, in the Western District of Washington. 28 § U.S.C. 1402(b).

1.4 Plaintiff has fully complied with the provisions of 28 U.S.C. §2675 of the Federal Tort Claims Act, as further described in Section III below.

## II. PARTIES

2.1 Plaintiff is a resident of Vancouver, Washington.

2.2 The United States of America is a governmental entity, and is responsible by law for the tortious conduct of its employees under 28 U.S.C. §2671 *et seq.* The United States Department of Energy is an agency of the United States Government and the United States is the proper defendant in suits under the Federal Tort Claims Act for the negligence of federal employees in the course and scope of their employment. Bonneville Power Administration ("BPA") is a federal power marketing administration within the Department of Energy.

2.3 EC Company is now and has been at all material times hereto an Oregon corporation doing business in the state of Washington, County of Cowlitz. EC Company does business under the assumed business name of EC Electric ("EC").

## III. SERVICE OF CLAIM FOR DAMAGE, INJURY OR DEATH

3.1 Less than two years after the date Plaintiff's claim arose, Plaintiff properly served a Claim for Damage, Injury or Death (Standard Form 95) on the U.S. Department of Energy and BPA via March 15, 2022, mailing of the claim forms and supporting documentation to the US

COMPLAINT - 2

SCHAUERMANN THAYER
JACOBS STAPLES & EDWARDS, PS
1700 E. FOURTH PLAIN BLVD.
VANCOUVER, WA 98661
(360) 695-4244

Department of Energy General Counsel's Washington, DC, office, and to the BPA General Counsel's office in Portland, Oregon.

3.2  More than six months have elapsed since service of the various Claims for Damage, Injury or Death.

3.3  The Department of Energy/BPA, mailed, via certified mail, a letter dated August 23, 2022, denying Plaintiff's claims.

3.4  All requirements for the filing of the Claim for Damage, Injury or Death under the Federal Tort Claims Act have been fulfilled and this matter is properly before the Court. This lawsuit is filed prior to the expiration of six months from the date of the Department of Energy's denial letter, pursuant to 28 U.S.C. §2401.

## IV. FACTS

4.1  The incident that is the subject of this lawsuit (hereinafter "the incident") occurred on or about September 12, 2020, at a Department of Energy/BPA electrical substation in Longview, Washington, at or near 4029 Industrial Way.

4.2  On the date at issue, Plaintiff was working for a temporary employment agency, Resource Management Associates ("RMA"), under the direction of personnel from the Department of Energy/BPA and EC Electric, as part of a construction crew at the Longview BPA substation.

4.3  At approximately 7:30 a.m., the construction crew commenced a "J1 briefing" ("the briefing") in preparation for the removal of several pieces of equipment- 230 kV disconnects- from the structures those disconnects had been attached to, using a crane. The disconnects were General Electric Model RD-101, approximately 72 inches tall, 18 inches wide at their base, and weighed approximately 1800 lbs.

COMPLAINT - 3

SCHAUERMANN THAYER
JACOBS STAPLES & EDWARDS, PS
1700 E. FOURTH PLAIN BLVD.
VANCOUVER, WA 98661
(360) 695-4244

4.4     The crew consisted of several individuals who were employees of BPA, including (all as labeled in BPA's incident investigation report): Foreman #1, Foreman #3, Journeyman Electrician #1, Journeyman Electrician #2, and Journeyman Electrician #3. Also on the crew were several individuals who were employees of EC, including: Contract Journeyman Electrician #1 and Contract Journeyman Electrician #2. Finally, the crew also included individuals who were employees of RMA, including: an equipment operator, and Plaintiff, who was a contract laborer.

4.5     The briefing was led by BPA Journeyman Electrician #1. The briefing did not include any discussion of specific roles the crew members would be expected to fulfill while rigging the disconnects, nor hazards unique to the load being rigged, despite the fact that the disconnects' physical characteristics suggested shifting of the load/tipping was a credible threat.

4.6     While various crew members would later take on certain roles (such as the safety watcher and signaler), no individual would ever be designated to act in a recognized supervisory capacity during the rigging activities. Responsibilities for completing certain tasks that would later be a factor in the incident (e.g., installing lag screws/bolts to secure disconnects to cribbing, detaching rigging apparatus from the disconnects) were not assigned during or subsequent to the briefing. During the activities at issue in this lawsuit, the individuals who ultimately took on roles as safety watchers were BPA Journeyman Electrician #1 and BPA Journeyman Electrician #2. BPA Foreman #1 and BPA Foreman #3 did not supervise the lifting and setting of the disconnect that caused Plaintiff's injuries.

4.7     Prior to the crew engaging in their work, there was insufficient information within BPA's training and safety curriculum to equip crews with processes and knowledge that would facilitate safe and successful performance of rigging activities. No available BPA documents,

COMPLAINT - 4

SCHAUERMANN THAYER
JACOBS STAPLES & EDWARDS, PS
1700 E. FOURTH PLAIN BLVD.
VANCOUVER, WA 98661
(360) 695-4244

work standards, or safety manuals defined rigging procedures or associated roles and responsibilities, nor did they establish minimum standards or fundamentals for engaging in rigging activities. Any rigging-related BPA courses crew members had taken prior to this incident did not cover rigging fundamentals (including restraining detached rigging gear away from cribbing and equipment when raising the hook), and instead built upon an assumed level of worker knowledge and experience.

4.8   Prior to the crew engaging in their work on the date of Plaintiff's injury incident, a similar incident occurred at a different BPA substation on August 5, 2020, in which three similar disconnects were toppled by a forklift. Knowledge of this prior incident would have increased the likelihood that the BPA and EC leadership of the crew Plaintiff was working on would recognize the potential for the disconnect to topple, and would have likely altered their approach on the date in question. No safety alert or other form of communication was issued by BPA to notify crews performing disconnect replacement activities of the August 5, 2020 incident.

4.9   At approximately 10:30 a.m. on the date of Plaintiff's injury incident, the disconnect was lifted from its structure with a crane, using a four-sling rigging configuration, featuring two slings on opposite sides of the disconnect's narrow frame. The RMA equipment operator successfully set the disconnect down on two parallel runs of wood cribbing. The equipment operator continued to lower the hook to the point where it no longer bore the disconnect's weight.

4.10   As Plaintiff (who was positioned on the east side of the disconnect) began installing lag screws/bolts (to connect the disconnect frame to the wood cribbing) on the east side of the disconnect, EC Contract Journeyman Electrician #1 (who was positioned on the west side

COMPLAINT - 5

SCHAUERMANN THAYER
JACOBS STAPLES & EDWARDS, PS
1700 E. FOURTH PLAIN BLVD.
VANCOUVER, WA 98661
(360) 695-4244

of the disconnect) turned away from the disconnect to speak with EC Contract Journeyman Electrician #2 and BPA Journeyman Electrician #3, who were descending on a nearby lift.

4.11 After speaking with the other crew members, EC Contract Journeyman Electrician #1 turned back towards the disconnect. EC Contract Journeyman Electrician #1 assumed that Plaintiff had installed lag screws/bolts on both sides of the disconnect. Based solely on that mistaken assumption, EC Contract Journeyman Electrician #1 began detaching the slings from the disconnect's west side. While doing so, he did not notice that the lag screws/bolts had not yet been installed on the west side.

4.12 Prior to and after EC Contract Journeyman Electrician #1 began to detach the slings from the disconnect's west side, there were no communications seeking validation that all four lag screws/bolts were installed connecting the disconnect frame to the cribbing, nor any communications seeking validation that the rigging gear was clear of the disconnect prior to raising the hook.

4.13 EC Contract Journeyman Electrician #1 made a hand signal for the operator to raise the hook. Plaintiff made no such signal. The RMA equipment operator believed he had been given a "raise hook" hand signal, indicating that the hook and rigging could be raised clear of the disconnect.

4.14 The RMA equipment operator, unable to view the west side of the disconnect from the crane cab, considered calling out to Plaintiff and EC Contract Journeyman Electrician #1 to remind them to hold the slings away from the disconnect. The RMA equipment operator decided against doing so, because he'd had recent bad interactions in the same crew where a crew member had responded in an unreceptive manner to the RMA equipment operator's suggestions on how to do some part of the work.

COMPLAINT - 6

SCHAUERMANN THAYER
JACOBS STAPLES & EDWARDS, PS
1700 E. FOURTH PLAIN BLVD.
VANCOUVER, WA 98661
(360) 695-4244

4.15 Prior to Plaintiff's injury incident, BPA had a practice of placing equipment operators in the role of supporting work crews rather than giving the operators explicit authority over the crews when it came to performance of rigging activities, leaving an operator's ability to ensure safe rigging practices dependent on individual crew members' willingness to accept direction.

4.16 The RMA equipment operator began raising the hook on the crane at approximately 10:51 a.m. EC Contract Journeyman Electrician #1 was not restraining the two slings on the west side of the disconnect so as to ensure that the slings were sufficiently clear. As the crane hook raised the slings, one or both slings on the west side snagged on the disconnect's frame. The RMA equipment operator felt the line become taut, and repositioned the controls to stop the hook, but upward motion of the hook didn't immediately cease due to the crane's operating characteristics. The force of the crane imparted to the west side of the disconnect due to the snag, coupled with the absence of lag screws/bolts on the west side, and the disconnect's high center of gravity, resulted in the disconnect leaning eastward, the lag screws/bolts on the east side pulling partially out of the cribbing and bending, and the disconnect toppling eastward.

4.17 EC Contract Journeyman Electrician #1 observed the top of the disconnect moving and yelled out a warning. At that time Plaintiff, EC Contract Journeyman Electrician #2, and BPA Journeyman Electrician #3 were on the east side of the disconnect. The electricians were able to evade the disconnect as it toppled. Plaintiff, who was immediately adjacent to the disconnect and had been leaning over installing lag screws/bolts, fell while attempting to evade. The top of the double glass portion of the disconnect fell onto Plaintiff's legs, causing significant injuries.

COMPLAINT - 7

SCHAUERMANN THAYER
JACOBS STAPLES & EDWARDS, PS
1700 E. FOURTH PLAIN BLVD.
VANCOUVER, WA 98661
(360) 695-4244

## V. LIABILITY

5.1    The United States was the property owner acting as its own general contractor for the work being done. As such, it had a duty to provide Plaintiff with a safe workplace and comply with relevant federal, state and local regulations.

5.2    The United States is responsible for the tortious acts, omissions, and conduct of its employees and agents acting in the course and scope of their employment or agency, under the Federal Tort Claims Act; under the Act the United States is liable because, if the United States were a private person, it would be liable to Plaintiff in accordance with the laws of the State of Washington.

5.3    The employees or agents of the United States involved in designing, executing, and supervising the project at issue were negligent under Washington law, in that they failed in their duty to Plaintiff to use reasonable care and competence in their design, preparation, execution and supervision of the substation equipment replacement activities at issue. The negligent acts or omissions include but are not limited to: inadequate implementation and utilization of structured processes for ensuring that rigging tasks were safely planned and executed; inadequate briefing/instruction/training provided to the crew regarding hazards unique to the load being rigged; inadequate briefing/instruction/training provided to the crew regarding rigging fundamentals and basic procedures; inadequate briefing/instruction/training provided to the crew regarding prior similar incidents; inadequate supervision/oversight during rigging activity; failure to adequately communicate and/or facilitate communication regarding the status of lag screw/bolt installation prior to rigging gear being detached from the disconnect, and the status of rigging gear being restrained clear of the disconnect prior to hook lift; failure to ensure

///

COMPLAINT - 8

SCHAUERMANN THAYER
JACOBS STAPLES & EDWARDS, PS
1700 E. FOURTH PLAIN BLVD.
VANCOUVER, WA 98661
(360) 695-4244

1  rigging gear was restrained clear of the disconnect prior to hook lift; failure to provide safe
2  materials upon which the disconnect would rest (wood cribbing).

3       5.4      The employees or agents of the United States involved in designing, executing,
4  and supervising the work at issue were negligent under Washington law, in that they exercised
5  control over the details of the substation equipment replacement on the jobsite, and within the
6  scope of that control failed in their duty to Plaintiff to use reasonable care in their exercise of that
7  control.  The negligent acts or omissions include but are not limited to: those listed in paragraph
8  5.3 of this Complaint; failing, after exercising control over the details of the substation
9  equipment replacement, in their duty to Plaintiff to keep the worksite reasonably safe; by failing
10 to properly ensure compliance with safe rigging and other work practices; by failing to adhere to
11 applicable state and federal regulations regarding rigging and other worksite safety.

12       5.5      The employees or agents of the United States involved in designing, executing,
13 and supervising the work at issue were negligent under Washington law, in that they failed in
14 their duty to use reasonable care in the supervision of the on-site employees or agents, and other
15 contractors, who exercised control over the details of the substation equipment replacement on
16 the jobsite at issue.

17       5.6      EC is responsible/vicariously liable for the tortious acts, omissions, and conduct
18 of its employees and agents acting in the course and scope of their employment or agency under
19 Washington law.

20       5.7      The employees or agents of EC involved in designing, executing, and supervising
21 the project at issue were negligent under Washington law, in that they failed in their duty to
22 Plaintiff to use reasonable care and competence in their design, preparation, execution and
23 supervision of the substation equipment replacement activities at issue, while exercising control

SCHAUERMANN THAYER
JACOBS STAPLES & EDWARDS, PS
1700 E. FOURTH PLAIN BLVD.
VANCOUVER, WA 98661
(360) 695-4244

over the details of the work being done. The negligent acts or omissions include but are not limited to: inadequate implementation and utilization of structured processes for ensuring that rigging tasks were safely planned and executed; inadequate briefing/instruction/training provided to the crew regarding hazards unique to the load being rigged; inadequate briefing/instruction/training provided to the crew regarding rigging fundamentals and basic procedures; inadequate briefing/instruction/training provided to the crew regarding prior similar incidents; inadequate supervision/oversight during rigging activity; failure to adequately communicate and/or facilitate communication regarding the status of lag screw/bolt installation prior to rigging gear being detached from the disconnect, and the status of rigging gear being restrained clear of the disconnect prior to hook lift; failure to ensure rigging gear was restrained clear of the disconnect prior to hook lift; failure to provide safe materials upon which the disconnect would rest (wood cribbing).

    5.8    The employees or agents of EC involved in designing, executing, and supervising the work at issue were negligent under Washington law, in that they exercised control over the details of the substation equipment replacement on the jobsite, and within the scope of that control failed in their duty to Plaintiff to use reasonable care in their exercise of that control. The negligent acts or omissions include but are not limited to: those listed in paragraph 5.7 of this Complaint; failing, after exercising control over the details of the substation equipment replacement, in their duty to Plaintiff to keep the worksite reasonably safe; by failing to properly ensure compliance with safe rigging and other work practices; by failing to adhere to applicable state and federal regulations regarding rigging and other worksite safety.

    5.9    The employees or agents of EC involved in designing, executing, and supervising the work at issue were negligent under Washington law, in that they failed in their duty to use

COMPLAINT - 10

SCHAUERMANN THAYER
JACOBS STAPLES & EDWARDS, PS
1700 E. FOURTH PLAIN BLVD.
VANCOUVER, WA 98661
(360) 695-4244

reasonable care in the supervision of the on-site employees or agents, and other contractors, who exercised control over the details of the substation equipment replacement on the jobsite at issue.

## VI. DAMAGES

6.1     As a direct and proximate result of the tortious acts, omissions, and conduct of the agents or employees of the United States and EC, Plaintiff Jose Chipres Madriz has suffered injuries and damages which include:

        A.     General (non-economic) damages, including but not limited to:

                1.     Past and future physical injuries, including pain and suffering;

                2.     Past and future mental and emotional injuries;

                3.     Past and future disabilities; and

                4.     Past and future loss of enjoyment of life.

        B.     Special (economic) damages, including but not limited to:

                1.     Past and future medical, rehabilitation, and psychological treatment and related expenses; and

                2.     Past and future loss of earnings and impairment of earning capacity.

        C.     Other damages as authorized by law.

        D.     Costs and attorney fees as authorized by law.

///

///

///

///

///

COMPLAINT - 11

SCHAUERMANN THAYER
JACOBS STAPLES & EDWARDS, PS
1700 E. FOURTH PLAIN BLVD.
VANCOUVER, WA 98661
(360) 695-4244

## VII.  RELIEF REQUESTED

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, for general/non-economic, special/economic, loss of consortium, and other damages as allowed by law, for attorney's fees and costs incurred in maintaining this action, for prejudgment interest and for such other, and further relief as the Court deems just.

DATED this __19__ day of October, 2022.

_____
SCOTT A. STAPLES, WSBA 39325
Of Attorney for Plaintiff
Schauermann Thayer Jacobs Staples & Edwards, P.S.
1700 E. Fourth Plain Blvd.
Vancouver, WA 98661
Telephone: (360) 695-4244
Fax: (360) 696-0583
Email: scotts@stlaw.com

COMPLAINT - 12

SCHAUERMANN THAYER
JACOBS STAPLES & EDWARDS, PS
1700 E. FOURTH PLAIN BLVD.
VANCOUVER, WA 98661
(360) 695-4244